[No. 1477.]

WILLIAM BARNES, by T. J. BARNES, His Guardian Ad Litem, Respondent, v. WESTERN UNION TELEGRAPH COMPANY, Appellant.

EVIDENCE—SUBSTANTIAL CONFLICT—NEGLIGENCE. When it appears that there is a substantial conflict in the evidence, upon the issue of negligence in this case, and there is evidence sufficient to support either contention, this court will not interfere with the verdict of the jury or the finding of the court on such issue.

CONTRACTS—LIABILITY OF TELEGRAPH COMPANY—UNREPEATED MESSAGE. A contract stipulating that a telegraph company shall not be liable for mistakes or delays in transmission or delivery, or for non-delivery of an unrepeated message, does not free such company from liability for a delay in the delivery of a message, not caused by mistakes in the tenor of the message.

IDEM—MUST TRANSMIT AND DELIVER MESSAGES. The defendant telegraph company, upon the receipt of the message and the sum demanded therefor, undertook, and its legal obligation was to transmit the same over its telegraph line, with reasonable care and dispatch, and to deliver it to the person addressed without neglect or unnecessary delay, and for a failure to so deliver the message the law imposes a liability for damages which may result by reason of negligent or unnecessary delay.

IDEM—TELEGRAPH COMPANIES—REPEATED MESSAGES. The evident and only object in having telegraphic messages repeated are to enable operators transmitting and receiving the same to readily detect and correct any mistakes or errors that might be made in the message as received for transmission and delivery, and thus enable the telegraph company to avoid such errors and their legal consequences.

CONTRACTS—NO LIABILITY FOR DAMAGES RESULTING FROM REMOTE CONSE-
QUENCE OF BREACH OF CONTRACT. Damages resulting to the plaintiff
by reason of the loss of a leg, due to being run over by a railroad
car, are not the natural and proximate consequence of defendant's
breach of contract to deliver a telegraphic message without unneces-
sary delay.

EXCESSIVE DAMAGES. A verdict for $1,250 for the non-delivery of a tele-
gram requesting a railroad ticket, by reason whereof plaintiff was
obliged to proceed on foot or steal a ride on trains from Grand
Junction, Colorado, to Loyelock, Nevada, was excessive.

APPEAL from the District Court of the State of Nevada;
*G. F. Talbot*, District Judge:

Action of William Barnes against the Western Union Tele-
graph Company, for damages for delay in delivery of a tele-
gram. From a judgment for plaintiff, and an order denying
a new trial, defendant appeals. Reversed.

The facts sufficiently appear in the opinion.

*R. B. Carpenter*, for Appellant:

I. The first question presented in this case is as to the
validity of the stipulations of the telegraph blank signed by
the plaintiff. Whether these stipulations are rules of the
company, or a contract between the sender of the message
and the defendant, is immaterial, as nearly all the authorities
agree that the signing of the message by the sender charges
him with the knowledge of the rules and regulations con-
tained therein and thereon. Our contention is that this is a
contract made between the parties at the time of the recep-
tion of the message by the company, and that after making
said contract the message was received, transmitted and
delivered, subject to the terms and conditions of the contract
itself; that, there being an express contract for the trans-
mission of the message in controversy, said contract super-
seded any legal duty of the telegraph company in regard to
the transmission and delivery of messages, and defined the
rights and liabilities of both parties. Professor Pollock, in
his very able work on The Law of Torts, says: " Whenever
there is a contract to do something, the obligation of the con-
tract is the only obligation between the parties with regard
to the performance, and any action for failure or negligence
therein is an action on the contract, and this whether there

was a duty antecedent to the contract or not" (page 437).
The agreements contained in this contract were intended to
modify the legal duties and liabilities of the defendant, and
the question for this court is whether these agreements are
reasonable and therefore valid.

II.   In regard to the stipulation against liability for unre-
peated messages the courts of Alabama, Georgia, Vermont,
Arkansas, Tennessee, Virginia, Indiana, Ohio and Maine,
Illinois and Utah have held that any stipulation whereby a
telegraph company seeks to exempt itself from liability, or
limit its liability, for damages caused by the negligence of
the company, its operators or servants, in the transmission
and delivery of messages, is against public policy, and there-
fore void. (*American Union Telegraph Co.* v. *Daugherty*, 89
Ala. 191; *Gillis* v. *W. U. T. Co.*, 61 Vt. 461; *W. U. T. Co.* v.
*Short*, 53 Ark. 439; *Marr* v. *W. U. Tel. Co.*, 85 Tenn. 533; *W.
U. T. Co.* v. *Reynolds*, 77 Va. 185; *W. U. T. Co.* v. *Meridith*,
95 Ind. 93; *W. U. T. Co.* v. *Blanchard*, 68 Ga. 299; *Telegraph
Co.* v. *Groswold*, 37 Oh. St. 301; *Tyler* v. *W. U. T. Co.*, 60 Ill.
421.)

III.   These cases all proceed upon the ground that
such an agreement is contrary to public policy.  None of
them give any reason why it is contrary to public policy,
except the insufficient and unsatisfactory one, that the tele-
graph company is a *quasi* public corporation.  It is the
province of courts to construe contracts, not to abrogate or
make them.  The continued iteration by these courts that
such contracts are against public policy without other or
further reasons being given than the *quasi* public character
of the telegraph company, is one of the anomalies in judicial
decisions.  Why is such a contract against public policy?
In this case what possible difference did it make, or could it
have made, to the public, whether the plaintiff paid the tele-
graph company sixty or ninety cents?  The dispatch was
upon his business, concerned no one but himself, was solely
for his benefit.  He signed the contract under which the
message was transmitted and delivered, and therein he
agreed that the company should not be liable for mistakes
or delays in the transmission or delivery, or for the non-
delivery of the message, whether happening by the neglect

of its servants or otherwise, beyond the amount received for sending the same. The plaintiff, of all persons in the world, knew the importance of the message; knew, if important, that it should have been repeated; knew that he had contracted against the recovery of damages in case of delay or non-delivery, if the message was not repeated. Upon what possible ground, therefore, can it be said that in this case this agreement was against public policy?

IV. It is admitted by nearly all these cases that the telegraph company is not a common carrier, and if it is not, then, without any stipulation, it would not be responsible for errors from causes beyond its control. The plaintiff was apprised by his contract that to guard against mistakes or delays it was necessary to repeat the message, and the court judicially knows that the sending operator has and can have no other means of knowing that the message has been transmitted correctly. It is said that it would have made no difference in this case; the reply is that the parties had a right to make the contract, and did make it, that it is reasonable, and they are bound by its terms. The decisions of these courts have conceded to the telegraph few rights of any kind, except that of being sued.

V. In sharp contrast to these opinions of the courts of Illinois and Vermont, are those delivered by Chief Justice Marshall, Mr. Justice Washington, and Mr. Justice Story, in *Trustees of Dartmouth College* v. *Woodward*, 4 Wheaton, 625. That court then and since has felt it incumbent upon it to sustain the constitutional provisions to protect parties in their contractual rights, not to destroy them. The character of the rights thus protected is well stated in a subsequent part of the opinion of the chief justice as follows: " That anterior to the formation of the constitution, a course of legislation had prevailed in many, if not all the states, which weakened the confidence of man in man, and embarassed all transactions between individuals, by dispensing with a faithful performance of engagements. To correct this mischief by restraining the power which produced it, the state legislatures were forbidden to pass any law impairing the obligations of contracts, that is, of contracts respecting property, under which some individual could claim a right to some-

thing beneficial to himself." " The provision of the consti-
tution has never been understood to embrace other contracts
than those which respect property, or some subject of value,
and confer rights which may be asserted in the courts of jus-
tice."

VI. The whole legislative power of all the states whose
courts have held the stipulation in question to be void, can-
not by a law passed by each, under this provision of the
federal constitution, in any way impair the contract under
discussion, and yet these courts, with the full knowledge of
the constitutional provision of the inability of the state leg-
islature to impair contracts, have, by these decisions, done so
effectually within their jurisdictions. It is submitted that
decisions wanting in reason, in spirit inhibited by the con-
stitution of the United States and against the weight of
authority, should not be followed by this court.

VII. The overwhelming weight of authority is to the effect
that such stipulations are not against public policy nor
unreasonable, and therefore valid. The English courts have
universally held similar stipulations to be reasonable, not
against public policy, and valid, and that they exempt
the company in all cases except for willful misconduct or
gross negligence. The reason why such stipulations cannot
exempt the company from willful misconduct or gross neg-
ligence is that such negligence or conduct is a fraud on
the part of the company, and, of course, would not protect
it. (*McAndrew* v. *Electric Tel. Co.*, 17 C. B. 3; *Baxter* v. *Domin-
ion Tel. Co.*, 37 U. C. 2 B. 470.) This rule of the English
courts is followed by the courts of Massachusetts, New York,
Pennsylvania, Maryland, Texas, California, Michigan, South
Carolina and Nebraska and other states. (*Grinnell* v. *W. U.
T. Co.*, 113 Mass. 229; *Clement* v. *W. U. T. Co.*, 137 Mass.
463; *Pasmore* v. *W. U. T. Co.*, 78 Pa. St. 242; *Kiley* v. *W.
U. Tel. Co.*, 109 N. Y. 231; *U. S. Telegraph Co.* v. *Gilder-
sleve,* 29 Md. 232; *W. U. T. Co.* v. *Lowrey,* 32 Neb. 732; *W.
U. T. Co.* v. *Neil,* 57 Tex. 283; *Hart* v. *W. U. T.,* 66 Cal. 579;
*Redpath* v. *W. U. T. Co.,* 112 Mass. 71; *Aiken* v. *W. U. T. Co.,*
5 S. C. 258; *W. U. T. Co.* v. *Carew,* 15 Mich. 525; *Ellis* v.
*American Tel. Co.,* 13 Allen, 226.) To these well digested,
thoroughly considered and ably argued cases must be added

the Circuit and Supreme Courts of the United States. In *Primrose* v. *W. U. T. Co.*, 154 U. S. 1, the whole subject is elaborately discussed and the validity of the stipulation fully established as the doctrine of that court.

VIII.   A great number of cases might be cited from the state courts, but the foregoing fully state the grounds for holding the stipulation valid. The Circuit Courts of the United States have unanimously so held. (*White* v. *W. U. T. Co.*, 5 McCrary, 103; *Jones* v. *Same*, 18 Fed. Rep. 717; *Beasley* v. *Same*, 39 Fed. Rep. 181.)

IX.   But even a common carrier of goods may, by special contract with the owner, restrict the sum for which he may be liable, even in case of a loss by the carrier's negligence, and this upon the distinct ground, as stated by Mr. Justice Blatchford, speaking for the whole court, that " where a contract of the kind, signed by the shipper, is fairly made agreeing on the valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier, the contract will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations." (*Hart* v. *Pennsylvania Railroad*, 112 U. S. 331, 343.)

X.   The courts of a majority of the states have held, and it is certainly the law of the Circuit and Supreme Courts of the United States, that a common carrier may, by special contract, limit his common law liability. (*New Jersey Steam Nav. Co.* v. *Merchants' Bank*, 47 U. S. 384; *York Company* v. *Central R. R.*, 3 Wall. 107; *Express Co.* v. *Caldwell*, 21 Wall. 264; *R. R. Co.* v. *Pratt*, 22 Wall. 123; *Liverpool & G. W. Steam Navigation Co.* v. *Phœnix Ins. Co.*, 129 U. S. 458; *Hart* v. *Pennsylvania R. R. Co.*, supra. See, also, *Boscowitz* v. *Adams Ex. Co.*, 93 Ill. 523; *Taylor* v. *Little R.*, 39 Ark. 145; *Cooper* v. *Berry*, 21 Ga. 526; *Harvey* v. *Terre Haute, etc., R.*, 74 Mo. 541; *Pittsburg, etc.*, v. *Barrett*, 36 Ohio St. 448; *Dillard* v. *Louisville, etc., R.*, 2 Lea, 288; *E. N. Va. and Ga. R.* v. *Bramley*, 5 Lea, 401; *Galveston, etc., R.* v. *Allison*, 12 Am. & Eng. R. R. Cas. 28; *Baltimore, etc., R.* v. *Rathbone*, 1 W. Va.

87; *Cream City, etc., R.* v. *Chicago, etc., R.*, 21 Am. & Eng. R. R. Cas. 70; *Cutts* v. *Brainard*, 42 Vt. 566; *Smith* v. *N. Y. C. R. R. Co.*, 24 N. Y. 222; *Parsons* v. *Monteath*, 13 Barb. 353.)

XI.  Upon reason, instead of the stipulation in question being against public policy, the best interests of the country require that such a stipulation should be sustained.  It will not be denied that hundreds of messages sent over the wires involve no pecuniary loss, to one that does.  The public are deeply interested in the cheap transmission of intelligence. It must be assumed in this case that the rates charged by the telegraph company, including the price of repetition, are reasonable.  If they were otherwise, the Congress of the United States would have legislated upon the subject and lowered the rate.  This being so, either the company must be paid the additional rate required for the transmission of important messages by the sender, or all the messages transmitted by the company must submit to an additional burden.

XII.  The damages in this case are not only remote and contingent, but have no connection with the delay in the delivery of the message.  Assuming for the argument that the defendant was guilty of negligence in the delay in the delivery of the message at Lovelock, it is liable for a breach of its contract only for such damages as were the natural, necessary, immediate and direct results of the breach, or such as may be properly admitted to have been in contemplation of the parties when the contract was made; and all remote and uncertain results must be excluded because they form no part or legal basis for the determination of the extent of plaintiff's injury.

*E. S. Farrington*, for Respondent:

I.  Appellant's authorities neither hold that the telegraph company can, by stipulation, exempt itself from liability for gross negligence; nor do they hold that the stipulation as to the repetition of the message exempts the telegraph company from liability for non-delivery of the telegram after its arrival at the terminal office.  The law of this case, as declared in the instructions and rulings of the lower court, is that the stipulation as to repeating the message is valid, and the defendant is exempt from liability except for

willful or gross negligence, and thus the. district court conceded to the telegraph company all which it contended for on this point. The court on motion for non-suit decided that there was sufficient evidence of negligence to go to the jury. The jury decided that the defendant was guilty of gross negligence, and the court on motion for new trial decided that there was sufficient evidence of gross negligence to sustain the verdict, and that the verdict was not against the weight of the testimony. The negligence complained of in the case at bar was not a delay in transmission, nor an error in the message as delivered. Such delay or error could have been discovered and remedied had there been a request to the terminal office to repeat the message. The negligence in the case at bar was the delay in the delivery of the message after it had arrived at the terminal office. Had Operator Coffin repeated the message back to Grand Junction, it would in no wise have affected Manager Donelin, or hastened the delivery of the telegram.

II. The case cited by the appellant of *Ellis* v. *Telegraph Company*, 13 Allen, 226, was brought, not for negligent delay in delivering the telegram after its receipt at the terminal office, but for an error in transmitting the message, by substituting the words "seventy-five" for "twenty-five." The company had established the usual conditions as to repeating and insuring the message. There was no evidence of carelessness or negligence, except the error in the sum, which was made by some agent of the company in transmission. Chief Justice Bigelow, speaking for the court, held the stipulation as to repeating the message to be reasonable, and, so far as reasonable, it would limit the liability of the company. It was also held that the plaintiff could not recover without further proof of carelessness than that there was an error in the message as delivered. The opinion is only authority on these two points. The appellant, in citing this case, must have overlooked the statement of Chief Justice Bigelow, near the end of the opinion, that "*of course the defendants would be liable for any negligence causing damages which would not have been prevented by a compliance with these rules;*" viz: those relating to the repetition of the messages.

III. The object of repeating a message is to correct errors,

not to avoid delays in delivery after it is received at the terminal office; an incorrect message can be delivered as promptly as though it had been verified by repetition. This case of *Ellis* v. *Tel. Co.* may, therefore, be regarded as authority for the proposition that the telegraph company would be liable for any negligent and injurious delay in delivering a message, after it has reached the terminal office, even though the message was not repeated, because repetition would not have prevented the delay.

IV.   It is not the law of the majority of the states that a common carrier may, by special contract, exempt himself from liability for his own negligence, or the negligence of his servant. It is true that contracts limiting the liability of a common carrier to this extent have been upheld in certain jurisdictions, where the parties to the contract have agreed to the value of the property shipped, and this valuation has some relation to the value of the article itself, and the shipper has paid a lower freight rate, proportioned to the value so fixed. The shipper, in case of loss, can recover no more than the value agreed upon. In the case at bar, there is no attempt to fix the value of the message, or the extent of the damage which will be suffered in case the company fails to deliver the message. The agreement, if it is an agreement, is an attempt on the part of the company, to escape all liability for its own negligence, in case the message is not repeated, and if it be repeated, the amount agreed upon, to wit: fifty times the sum received for sending the message, is a mere trifle, and is fixed arbitrarily, and without any reference to the value of the service, the importance of the message, or the loss which will be suffered by the plaintiff in the case, if not delivered. The stipulation of the telegraph company is simply a bare-faced attempt to evade liability for its own negligence, and it cannot in any sense be regarded as an attempt to reasonably regulate the transaction of its business. (*G. R. & B. Co.* v. *Keener*, 44 Am. St. Rep. 197–198; *L. & R. R. Co.* v. *Stowell*, 15 S. W. Rep. 837.)

V.   The company cannot contract for exemption, either in whole or in part, from the liability for the negligence of itself or its employees. (*Boehl* v. *Railway Co.*, 44 Minn. 191; 46 N. W. Rep. 333; *McFadden* v. *Railway Co.*, 92 Mo. 334; 4 S. W.

Rep. 689; *Weiller* v. *Railroad Co.*, 134 Pa. St. 310; 19 Atl. Rep. 702; *Ashendon* v. *Railway Co.*, 5 Exch. Div. 190; 31 Moak's Eng. Rep. 644; *Dickinson* v. *Railway Co.*, 18 Q. B. Div. 176.) This is in harmony with the rule held in *Black* v. *Transportation Co.*, 55 Wis. 319; 13 N. W. Rep. 244.

VI. It is to be remembered that the shipper and the railroad company do not contract upon equal terms. Practically the shipper is bound to submit to whatever conditions are exacted by the carrier. To be lawful, such conditions must be reasonable. A contract relieving a carrier wholly or partially from liability for damages caused by its own negligence, is unreasonable. We must hold that the plaintiff was entitled to judgment for the amount of his verdict.

VII. Any stipulation restricting the liability of the company for negligence as to mistakes in transmission is void. (*W. U. Tel. Co.* v. *Cook*, 61 Fed. Rep. 624; *Ayer* v. *W. U. Tel. Co.*, (Me.) 10 Atl. 495; *Marr* v. *W. U. Tel. Co.*, (Tenn.) 3 S. W. Rep. 496; *True* v. *Tel. Co.*, 11 Am. Rep. 166; *W. U. Tel. Co.* v. *Short*, 9 L. R. A. 744; *Brown* v. *Postal Tel. Co.*, (N. C.) 16 S. E. Rep. 179; *Wertz* v. *W. U. Tel. Co.*, (Utah) 33 Pac. Rep. 136; *W. U. Tel. Co.* v. *Crall*, 17 Pac. Rep. 309; *Tel. Co.* v. *Daughtery*, 89 Ala. 191; *W. U. Tel. Co.* v. *Blanchard*, 45 Am. Rep. 480; *Gillis* v. *W. U. Tel. Co.*, 15 Am. St. Rep. 917; *Sweatland* v. *Tel. Co.*, 1 Am. Rep. 285; *Bartlett* v. *W. U. Tel. Co.*, 16 Am. Rep. 437; *Fleischner* v. *P. P. Tel. Cable Co.*, 55 Fed. Rep. 741; *Griswold* v. *W. U. Tel. Co.*, 41 Am. Rep. 500.)

VIII. The stipulation on the telegraph company's blanks restricting liability for unrepeated messages is unreasonable and void where the complaint is *not of a mistake in the message, but for delay or failure to deliver.* (*Thompson* v. *W. U. Tel. Co.*, 107 N. C. 449; 12 S. E. Rep. 428; *W. U. Tel. Co.* v. *Lyman*, 3 Tex. Civ. 460; 22 S. W. Rep. 656; *W. U. Tel. Co.* v. *Henderson*, 89 Ala. 510; 18 Am. St. Rep. 148–54; *Smith* v. *W. U. Tel. Co.*, 38 Ky. 104; 4 Am. St. Rep. 126–31; *W. U. Tel. Co.* v. *Fenton*, 52 Ind. 1; *W. U. Tel. Co.* v. *Broesche*, 13 Am. St. Rep. 843; *W. U. Tel. Co.* v. *Burrow*, 30 S. W. Rep. 378; *Harkness* v. *W. U. Tel. Co.*, 73 Ia. 190; 5 Am. St. Rep. 672; *Garrett* v. *W. U. Tel. Co.*, (Iowa) 49 N. W. Rep. 88; *True* v. *Tel. Co.*, 6 Me. 9; 11 Am. Rep. 156; *Candee* v. *W. U. Tel. Co.*, (Wis.) 17 Am. Rep. 452; *Hubbard* v. *W. U. Tel. Co.*, 14 Am. Rep. 775; *W. U.*

*Tel. Co.* v. *Linn,* 26 S. W. Rep. 490–492; *W. U. Tel. Co.* v. *Eubank,* 38 S. W. Rep. 1068; *Fleischner* v. *P. P. Tel. Cable Co.,* 55 Fed. Rep. 742; *W. U. Tel. Co.* v. *Houghton,* 17 S. W. Rep. 846.)

IX.   The telegraph company is bound by law to exercise due care and diligence to transmit correctly and promptly each telegram which is delivered to it, and to deliver the same without delay.   The sender's right to exempt the company from liability for negligent performance of its duty by stipulation signed before the telegram is received, is not absolute, but is subject to the control of public policy.   The assertion of appellant's brief, that "No doctrine is better settled by the English and American courts and the text writers than that any man may waive any legal right whether that right is secured to him by contract or by law," is probably made without consulting the books.   (See 28 Am. & Eng. Ency. of Law, p. 533.)

X.   *The damages in this case are neither remote nor contingent, but are the direct and natural result of the delay in delivery of the telegram under the special circumstances which were known to defendant.*   Damages are not too remote if, according to the usual experience of mankind, the result ought to have been apprehended.   (1 Jaggard on Torts, p. 276.)   The courts are uniform in holding that the plaintiff may recover any damages which are the natural, direct and proximate results of the negligence of the telegraph company.   The damages asked were $2,000; the jury awarded but $1,250.   The amount fixed by the verdict shows that the result was a matter of deliberation, and not of prejudice or partiality.   The verdict of the jury will not be set aside because it is claimed to be excessive, unless the damages are so flagrantly outrageous and extravagant as to evince intemperance, passion or corruption on the part of the jury.   Cases of this character are not submitted to a jury in order that the same verdict may be brought in that a court would give.   (*Solen* v. *Railroad,* 13 Nev. 137; *Brown* v. *Evans,* 17 Fed. Rep. 917; *W. U. Tel. Co.* v. *Broesche,* 13 Am. St. Rep. 846; *Engler* v. *W. U. Tel. Co.,* 69 Fed. Rep. 185.)

By the Court, BONNIFIELD, J.:

This action was brought to recover damages alleged to

have been sustained by the plaintiff by reason of the defendant's delay in delivering a telegraph message to the party to whom it was addressed at Lovelock, Nevada.

It is alleged in the complaint that the said telegram was delivered to the defendant on the 19th day of February, 1895, at about the hour of 1 o'clock in the morning at Grand Junction, in the State of Colorado, to be transmitted by the defendant over its telegraph line to Lovelock, State of Nevada, and there to be delivered to T. J. Barnes; that the plaintiff paid to the defendant the sum of sixty cents, the same being the price demanded by the defendant, and the usual and customary charge of defendant for its services in transmitting and delivering such message; that in consideration of said sum of money the defendant did then and there promise and agree, and it became and was the duty of the defendant to send and transmit said telegram through and over its said telegraph line from Grand Junction, in the State of Colorado, to Lovelock, in the State of Nevada, with reasonable diligence and attention, and without delay or neglect, and to deliver the same without delay or neglect and with reasonable dispatch to said T. J. Barnes at Lovelock, Nevada; that said telegram was duly and promptly sent by defendant to its office at Lovelock, and was received by defendant at its said office on the 19th day of February, 1895; that the said T. J. Barnes, on the said 19th day of February, and for more than twelve months prior thereto, resided in said town of Lovelock, which was well known in said town; that said Barnes was at his residence on the 19th day of February and every day thereafter up to and including the 23d day of February; that said defendant negligently, willfully and recklessly failed to deliver said telegram to the said T. J. Barnes, and said Barnes never received said telegram until the 22d day of February, 1895, at the hour of 2 o'clock in the afternoon of said day or thereabouts; that said telegram was as follows: "Grand Junction, Colo., 2–19.  To T. J. Barnes, Lovelock, Nevada:  Telegraph me ticket to Ogden.  William Barnes"; that had said telegram been promptly delivered by said defendant at Lovelock, plaintiff would at once have received from T. J. Barnes a ticket sufficient for his immediate passage from Ogden, Utah, to Lovelock, Nevada; that by

reason of defendant's negligence as aforesaid, plaintiff was compelled to walk out of the city of Ogden on the 21st day of February and did immediately thereafter walk and tramp from said city of Ogden to the town of Battle Mountain, Nevada, a distance of more than three hundred and twenty miles, all to plaintiff's great worry and distress of mind; that at said town of Battle Mountain, on or about the 23d day of February, 1895, the plaintiff was, without negligence on his part, run over by a car on the track of the Central Pacific Railroad Company and his right leg crushed, and thereafter said leg was amputated above the knee, all by reason of defendant's negligence as aforesaid, and to the plaintiff's damage in the sum of two thousand dollars.

The defendant answered by denying the allegations of the complaint, and alleging that the dispatch in controversy was filed and received at 1:45 o'clock a. m. at Grand Junction, Colorado, on the 20th day of February, and by mistake of its operator was dated the 19th day of February; that defendant delivered the message to T. J. Barnes on the 21st day of February; that said Barnes resided two or three miles from Lovelock, in the country; that the manager and messenger of the defendant were ignorant of his location or the proper place to deliver said message, and averring good faith and diligence in its effort to deliver said message on the day it was received; that the injury of the plaintiff at Battle Mountain was caused by his own criminal misconduct, carelessness and negligence. The answer also sets up a certain contract and alleges its execution by both parties. The contract was printed on the back of the message delivered by the plaintiff to the defendant, and so far as it is claimed to be material in this case it is as follows:

"To guard against mistakes or delays, the sender of a message should order it repeated, that is, telegraphed back to the original office for comparison. For this, one-half the regular rate is charged in addition. It is agreed between the sender of this message and this company that said company shall not be liable for mistakes or delays in the transmission or delivery, or non-delivery of any unrepeated message, whether happening by the neglect of its servants or otherwise, beyond the amount received for sending the same." *   *   *

On the face of the blank form is the following: "Send the following message subject to the terms on the back hereof, which are hereby agreed to." Immediately below this the telegram in question was written by the operator and signed by the plaintiff.

The jury returned a verdict for the plaintiff for the sum of $1,250 damages, and judgment was entered accordingly. This appeal is taken from the judgment and from the order of the court denying defendant's motion for new trial.

*Negligence:* Counsel for appellant contends that there was no unreasonable delay in delivering the message to T. J. Barnes at Lovelock; that there was no negligence on the part of the appellant with respect thereto. Counsel for respondent contends that there was gross negligence in delaying the delivery of said message to T. J. Barnes after it was received by appellant at its Lovelock office. Counsel have reviewed the evidence fully and argued at great length in support of their respective contentions.

Without reviewing the evidence, in this opinion, upon the many facts disclosed bearing upon the issue of negligence it is sufficient to say, that there is substantial conflict in the evidence with respect thereto, and evidence sufficient to support either contention and that, therefore, this court would not be justified in interfering with the verdict of the jury or the finding of the court in favor of the plaintiff on this issue.

*The Contract or Stipulation:* Counsel for appellant points out the following portion of the contract set up in its answer, as being that part on which it relied in the court below and relies on this appeal, to wit:

"It is agreed between the sender of this message and this company that said company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery of any unrepeated message, whether happening by the neglect of its servants or otherwise, beyond the amount received for sending the same."

The telegram in question was an unrepeated message.

The contention of appellant's counsel with respect to the contract is: That it is reasonable and valid; that the message was received, transmitted and delivered subject to its conditions; that it superseded any legal duty of the defend-

ant in regard to the transmission and delivery; that the contract was intended to modify the legal duties and liabilities of the defendant and that the plaintiff knew he had contracted against the recovery of damages in case of delay or non-delivery, if the message was not repeated.

Upon the other hand counsel for respondent maintains that any stipulation restricting the liability of the company for negligence is against public policy and void; that the stipulation restricting liability for an unrepeated message is unreasonable and void where the complaint is not for mistake or errors in the message but for delay or failure to deliver the message. The discussion with respect to the validity of the contract in question has taken a wide range. Counsel have exhibited great industry in collecting and reviewing the authorities in support of their respective contentions.

We will not follow them through their exhaustive arguments and extended review of many of the decided cases relating to questions which have arisen in other courts with respect to the validity of these stipulations on telegraphic messages, but which questions are not involved in this case. The defendant, when it received said message from the plaintiff and the sum demanded therefor, undertook thereby, and its legal obligation was, not only to transmit the same over its telegraphic line to Lovelock, Nevada, with reasonable care and dispatch, but to there deliver it to T. J. Barnes, without neglect or unnecessary delay. For failure to so deliver the message the law imposed upon it certain liability for the damages which the plaintiff might sustain by reason of negligent or unnecessary delay in the delivery. The question then to be considered and determined on this branch of the case may properly be formulated as follows: Has the contract or stipulation named the legal effect of restricting said liability by reason of the telegram being an unrepeated message, no mistake having been made in the tenor thereof?

It clearly appears to us that no such effect was intended or contemplated by either of the contracting parties when they entered into the contract. The evident and only objects in having telegraphic messages repeated are to enable the operators, transmitting and receiving the same over the

wires, to readily detect and correct any mistakes or errors they might make in the message as received for transmission and delivery, and thus enable the defendant to avoid such errors and their legal consequences. A delay, or the non-delivery of a message, might be caused by mistake made by the operators in the name or the address of the person to whom the message is sent, which might be detected and corrected, if the message was repeated, and thereby delay, or the non-delivery of the message, be avoided. If the delay complained of in this case was attributable to any such mistake, counsel's contentions and arguments in behalf of the appellant would be based on more reasonable grounds and be supported by many of the decided cases. It is not claimed, however, that the delay, on which this action is based, would or might have been avoided if the message had been repeated. The facts preclude such claim. When the repetition of the message could not have had any tendency to prevent the delay in this case, and when the delay was in no manner attributable to its not being repeated, the stipulation cannot, in our opinion, be held, with any degree of reason, to have the effect of restricting the defendant's said liability. To consider that the minds of the parties met and agreed, that the defendant's liability should be restricted for delay in delivering the message after it reached the Lovelock office, although it might be transmitted to and taken off there without any mistake occurring, it seems to us would be with-out reason, and would be ascribing to the parties an intent to relieve the defendant from the legitimate consequences of making default in the performance of a legal obligation, however great the damages might be to the plaintiff resulting therefrom, simply because he did not see fit to have the message repeated and pay an additional sum therefor, although the doing of which might prove to be utterly useless and nonsensical as a preventive of such default. So long as the parties are to be regarded as legally competent to enter into contracts, we cannot impute to them any such intent. If the telegraph company had such intent in placing such stipulations on its blank forms, then, evidently, its object was to deceive its patrons and to entrap them into unconsciously relieving it from liability for non-performance

of a plain legal and moral obligation.   We are not willing
to ascribe to it such intent or object.   The repetition of the
message would have had no legitimate effect to induce or to
expedite the delivery in this case.

"It is clear that if such a stipulation, assented to, is sus-
tained as having the force of a contract or condition, the
company is under no obligation to deliver any unrepeated
message.   For this reason such stipulations, exacted and
assented to, are generally treated as unreasonable and void."
(Sutherland on Damages, sec. 958.)

*Authorities:*   Many cases have been cited by appellant's
counsel in which it is held that the stipulations as set
forth in the printed form used by the telegraph companies
are reasonable and valid, but the most of them are cases
where mistake was made in omitting words, or in the sub-
stitution of words, or where the words of the message were
obscure or in cipher, and where the error would likely have
been detected if the message had been repeated.   On the
other hand, counsel for respondent has cited numerous author-
ities holding to the contrary, and a great many which hold
that such stipulations do not have the legal effect of restrict-
ing the company's liability for delay in delivering an unre-
peated message after it has been received and correctly
transcribed at the terminal office:

*Western Union Tel. Co.* v. *Henderson,* 89 Ala. 510; *Smith* v.
*Western Union,* 83 Ky. 104; *Western Union* v. *Broesche,* 72 Tex.
654; *Graham* v. *Western Union,* 1 Colo. 230; *True* v. *Interna-
tional Tel. Co.,* 60 Me. 9; *Hubbard* v. *Western Union,* 36 Wis.
558; *Western Union* v. *Eubank,* 38 S. W. 1068; *Western Union*
v. *Clark,* 61 Fed. Rep. 624; *Fleschner* v. *Pacific Postal Tel. Co.,*
55 Fed. Rep. 738.

Many other decisions are in line with the above cases.
All of these cases are based on better reasoning and sounder
legal principles, in our opinion, than the few cases which
sustain these stipulations as having the force of a contract
or condition with respect to delay or non-delivery of an unre-
peated message where no mistake or error has been committed
at the initial or terminal office.

*Damages:*   That the damages awarded by the jury are
excessive; that the evidence is insufficient to support the ver-

dict, and that the verdict is against law and the evidence, are grounds on which the motion for new trial was based. It will be observed that it is alleged in the complaint that the negligence of the defendant in delaying the delivery of the dispatch resulted in the plaintiff being compelled to walk out of Ogden and tramp to Battle Mountain a distance of more than three hundred and twenty miles, and that he did so to his great worry and distress of mind, and in the plaintiff being run over at Battle Mountain, without negligence on his part, by a railroad car, his leg being crushed and afterwards amputated above the knee, all to his damage in the sum of two thousand dollars. The evidence with respect to the accident at Battle Mountain shows that it was due to the plaintiff's own negligence and fault, besides the damages resulting to the plaintiff therefrom were not the natural and proximate consequence of the defendant's breach of the contract to deliver said message without unnecessary delay. This evidence was withdrawn by the court from the consideration of the jury and the court instructed the jury that no damages could be awarded for mental anguish. When this was done there was but little left of the plaintiff's case on the question of damages.

By partly walking and partly beating his way on the railroad cars the plaintiff arrived at Battle Mountain where the accident occurred. If it be conceded that, "it was natural and probable that he would proceed on foot to Lovelock or steal a ride on the trains" and that "this was what any reasonable man could have anticipated under the circumstances known by the defendant when the telegram was received at Grand Junction," as claimed by respondent's counsel, we are of opinion that the damages award of $1,250, by the jury was, nevertheless, greatly in excess of the damages the plaintiff sustained at Ogden or Battle Mountain, or on the road between the two places, other than from the worry and distress of mind alleged to have resulted from his having to walk and tramp, and damages sustained from the crushing and amputation of the leg, all of which were eliminated from the case by the court. It seems clear that the jury must have, mainly, based their verdict on these mat-

ters which were thus withdrawn from their consideration. In this the verdict was against the law as given by the court.

The judgment and order appealed from must be reversed. It is so ordered.

Counsel for appellant urges objections to instructions given, and to the refusal of the court to give instructions he asked for. We are of opinion that counsel has no just cause of complaint in this respect. The instructions were exceedingly favorable to the defendant and in the main substantially as the counsel requested.

BELKNAP, C. J.: I concur.

MASSEY, J., being of counsel in the case, did not participate in the above decision.