### BOX v. POSTAL TELEGRAPH-CABLE CO.

(Circuit Court of Appeals, Fifth Circuit. October 5, 1908. Rehearing Denied December 15, 1908.)

#### No. 1,646.

1. TELEGRAPHS AND TELEPHONES (§ 54*)—DELAY IN TRANSMISSION OF MESSAGE —LIMITATION OF LIABILITY.

A provision printed on a telegraphic message blank that "to guard against mistakes or delays the sender of a message should order it repeated; that is, telegraphed back to the originating office for comparison," and that unless so repeated the company shall not be liable for "mistakes or delays in the transmission or delivery or for nondelivery" beyond the amount received, is a reasonable and valid part of the contract made when a message is delivered for transmission on such blank; but it does not relieve the company from the duty to send an unrepeated message with reasonable promptness, nor from liability for damage caused by negligent delay in transmission alone, and which could not have been prevented by repeating it.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 43; Dec. Dig. § 54.*]

2. TELEGRAPHS AND TELEPHONES (§ 73*)—DELAY IN TRANSMISSION OF MESSAGE —ACTION FOR DAMAGES.

Plaintiff delivered a message to defendant telegraph company for transmission at 6 p. m., explaining to the agent that it was of great importance

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

BOX V. POSTAL TELEGRAPH-CABLE CO. 139

and must be delivered before 12 o'clock to save a contract for a purchase of property, the option on which would expire at that time. He gave the agent his telephone number, which was indorsed on the message, and requested to be notified when the message had been delivered. At 8 o'clock he called up the office and was informed that the message had been delivered. In fact, it was not sent until the next morning, when the option had expired, defendant claiming that its office at the point of delivery had been closed before the message could be sent, but the evidence on that question was not conclusive. There were other means of communication between the two places. *Held*, in an action to recover damages, that the evidence was such as to require the submission of the case to the jury, and that the direction of a verdict for defendant was error.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 76; Dec. Dig. § 73.*]

In Error to the Circuit Court of the United States for the Northern District of Mississippi.

T. B. Watkins (Stone & Sivley, of counsel), for plaintiff in error.

Wm. C. Dufour, H. Generes Dufour, and Henry Mooney (D. A. Scott, of counsel), for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. C. B. Box brought this suit against the Postal Telegraph-Cable Company for $20,000 damages alleged to have resulted from delay in the transmission and delivery of a message.

On October 13, 1905, Earl Brewer signed and delivered to the plaintiff in error, who will hereafter be called the plaintiff, an option on stock held by Brewer in the Dixie Cotton Company and on notes of the company for $7,500. The Dixie Cotton Company was a corporation owning land improved and equipped for planting. The notes held by Brewer were secured by a mortgage on the property, and, together with the stock, represented Brewer's interest in the property of the Dixie Cotton Company. The option, by its written terms, expired on Monday, October 16th, at 12 o'clock p. m. On that day, the plaintiff sent the following telegram to Brewer:

"Memphis, Tenn., October 16, 1905.

"Earl Brewer, Friar's Point. Miss.:

"Will you extend option until Saturday. Wire answer. C. B. Box."

Brewer did not wire answer, as requested, but answered by telephone that he would not extend the option, and that unless it was accepted by 12 o'clock that night he would not sell. For the purpose of closing the contract, the plaintiff, about 6 o'clock p. m., delivered the following telegram to the agent of the defendant in error (hereafter called the defendant), whose duty it was to receive messages:

"Oct. 16, 1905.

"To Earl Brewer, Friar's Point, Miss.:

"I will buy your interest in farm price named option. C. B. Box."

On the message was printed a request to send it, and a statement that it was to be sent subject to certain conditions that appear on the blank forms used by the defendant company. So far as it is material, the conditions will be quoted later. The plaintiff explained to the de-

fendant's agent who received the telegram at its Memphis office that its delivery to Brewer before 12 o'clock that night was important, and that it would cause plaintiff a loss of $12,500 if it was not delivered. The defendant's agent at Memphis attempted to send the message that evening, but could not do so, because, it appears, that at the time the attempt was made no operator was in the office at Friar's Point. The plaintiff left his telephone number with the defendant's agent who received the message, and requested that notice be given him when the message was delivered. No notice was given the plaintiff of the failure to transmit the message. The plaintiff made inquiry by telephone at the defendant's Memphis office at 8 o'clock p. m., and was told by some one answering the call that the message had been delivered. This was not true. But the message was transmitted and delivered to Brewer the next morning about 9 o'clock, after the option had expired. Brewer replied by telegram as follows:

"Friar's Point, Miss., 17th Oct.

B. Box, Care W. K. Burton & Co., Memphis, Tenn.:

"Your telegram received 9 o'clock this morning came too late. I had made other arrangements. Earl Brewer."

While there was conflict on the subject, the evidence on the part of the plaintiff tended to show that he was damaged $12,500 on account of his failure to close the trade by accepting the option before it expired. There was much evidence offered on both sides, material portions of which will be quoted hereafter. The trial court directed a verdict for the defendant.

The first and main contention in defense of the action of the trial court is that the plaintiff failed to have the message repeated, and that his right of action is barred by the following part of the contract printed on the back of the telegram:

"To guard against mistakes or delays, the sender of a message should order it repeated; that is, telegraphed back to the originating office for comparison. For this, one-half of the regular rate is charged in addition. It is agreed between the sender of the message written on the face hereof and the Postal Telegraph-Cable Company that said company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of any unrepeated message, beyond the amount received for sending the same."

The defendant made a tender of $1 to cover the amount received by it from the plaintiff.

Primrose v. W. U. Tel. Co., 154 U. S. 1, 14 Sup. Ct. 1098, 38 L. Ed. 883, is relied on as sustaining this defense. That case was a suit brought by the sender of a cipher unrepeated message. The message was not transmitted as delivered to the company. A material word in the cipher was omitted, another word with a different meaning being substituted, which caused the plaintiff to be damaged. It was apparent from the record in that case that if the plaintiff had paid the additional charge to secure the repetition of the message the damage to him would not have occurred. The court held that the rule in question was reasonable and valid, and that the plaintiff, having failed to have the message repeated, could not recover. This case settles the validity and binding effect of the rule in question, and is an answer in this court to all authorities cited which hold that the rule is void as

BOX V. POSTAL TELEGRAPH-CABLE CO.          141

against public policy. The question we have to deal with is whether or not the case before us comes within the control of the rule.

The rule is not intended to secure a timely effort to send the message, but to make more certain its accurate transmission. The company is under obligation to send the message with reasonable promptness for the regular rate when it receives such rate and accepts the message. It could not, for example, willfully or negligently fail to send, or unreasonably delay the sending or attempting to send, the message, and defend on the plea that only the regular rate was paid and not the additional fee for repetition. The first lines of the rule show its meaning plainly:

"To guard against mistakes or delays, the sender of the message should order it repeated; that is, telegraphed back to the originating office for comparison."

The message must, of course, be sent before it can be repeated; it must be sent and repeated before any comparison could be made. Although the regulation purports to be made to guard against mistakes or delays, it should be construed to refer to such mistakes and delays as could be corrected or avoided by repetition and comparison; otherwise, a delay caused by the conduct of the company in negligently failing to send or to attempt to send the message would come within the rule. And it is held that it does not apply where "no effort was made to put the message on its transit." Birney v. N. Y. & W. P. Tel. Co., 18 Md. 341, 81 Am. Dec. 607. It is difficult to believe that this stipulation was intended by the parties to be applicable to a case in which the conduct of the company made it impossible for the message to be repeated. We believe it would be wholly unjust and not within the intention of the contracting parties to permit this rule to exonerate the company from liability for a failure which, like the one here charged, would not have been prevented by repeating the message. Jones on Telegraph & Telephone Companies, § 379; 2 Thompson on Negligence, § 2434, and cases there cited; W. U. Tel. Co. v. Henderson, 89 Ala. 510, 520, 7 South. 419, 18 Am. St. Rep. 148; W. U. Tel. Co. v. Broesche, 72 Tex. 654, 10 S. W. 734, 13 Am. St. Rep. 843; Barnes v. W. U. Tel. Co., 24 Nev. 125, 50 Pac. 438, 77 Am. St. Rep. 791.

In W. U. Tel. Co. v. James, 162 U. S. 650, 16 Sup. Ct. 934, 40 L. Ed. 1105 the court reaffirmed the doctrine of the Primrose Case, and, at page 663, observed, in refusing to apply the regulation in question, that "there was no mistake in the transmission of the message, and there was no breach of the agreement."

The message in the case at bar was delivered to the company about 6 o'clock p. m. on October 16th, and it was not transmitted till the next morning. It was correctly sent and received. Its repetition would have had no effect on the case. The alleged damage was caused by no mistake or delay that repetition would have corrected. The message was held in the receiving office till the option it was sent to close had expired. We think that, on the facts, the regulation as to repeated messages has no application.

It is claimed that the court was justified in directing the verdict

because the message was received at Memphis after the hour of closing at Friar's Point, "and that it was within the rights of the defendant corporation to establish reasonable office hours at its various offices, and that the defendant was not under obligation to the public to keep all of its agents advised of the hours of the respective offices." The court having directed a verdict for the defendant, the plaintiff has the right to ask us to consider the case in the light of the evidence which is most favorable to him. We are not called on to quote and comment on all the evidence, nor to decide what the verdict should be, but we are to decide only whether there was sufficient evidence, if believed by the jury, to sustain a verdict in the plaintiff's favor. The testimony of W. B. Marley, in charge of the office at Friar's Point, was that he "was supposed to go on duty at 7 o'clock in the morning and stayed on duty until excused by the dispatcher and all trains were by, which was usually 6 or 6:30 o'clock in the afternoon." But on cross-examination the witness said that he frequently stayed in the office after night and took messages, "when I have to meet that freight train when it is 'way late.'" On the 16th of October Mr. Marley says that he left the office at 6:20 in the afternoon. Mr. Box testified that he delivered the message at the Memphis office "about 6 o'clock in the afternoon." A copy of the message offered in evidence is indorsed: "Time filed 6:20 p. m." J. F. Wilson testified for the company that he had supervision of the transmission of messages from Memphis, and that for the purpose of sending the message in question "we called Friar's Point at intervals of ten or fifteen minutes all along until after 8 o'clock," beginning the calls at about 6:35 p. m. It will be remembered that Mr. Box had previously sent a message asking to have the option extended. This fact, together with the explanation made by him to the Memphis agent of the nature and importance of the telegram, would make it the duty of the company's agent to inform him if it was known that there was any obstacle to the speedy transmission of the message. The fact that the Memphis agents received the message for immediate transmission tends to show that they believed the Friar's Point office to be open. It would be unjust to them and to the company to believe otherwise, for, under the circumstances, we cannot assume that they would receive the message, knowing that the Friar's Point office was closed and that it could not be transmitted till next day. After a careful examination of the evidence, we are unable to say that it shows certainly that the office hours at Friar's Point had expired or that the office was closed when the message was received at Memphis for transmission. That question, if material, was for the jury.

There is another view of the case that seems to us to make it improper to direct the verdict for the defendant on the ground now considered. When the plaintiff delivered the message at the Memphis office and paid for its transmission, he says he had a conversation with the defendant's agent:

"I went to the window, and the man waiting on the window received the telegram, and I tendered him the message and told him that it was a very important message; that I had an option on some valuable property that expired that night at 12 o'clock, and that unless I could get this telegram de-

BOX V. POSTAL TELEGRAPH-CABLE CO. 143

livered by 12 o'clock that night my option would expire, and I would lose $12,500; and so I told him I wanted to send it at the regular rates and everything, and asked him what it would be, and he told me 25 cents. Now, I asked him if he would call me up at my residence and let me know the time of the delivery of that message, that I wanted to know what time it was delivered, and he said he would, and I told him my phone number, and he turned right over on the back of the original telegram and put down my phone number out at my residence, number 2973A.

"Q. Who did you say put that down? A. The operator, or the gentleman receiving the telegram in the office. * * *

"Q. Well, sir, did you have any communication further with him about that at any other time subsequent to this time? If so, what was it? A. Well, about 8 o'clock that night I hadn't heard from him, and I wanted to know about the telegram; so I called the Postal Telegraph office up by phone, and they answered, and I told the gentleman answering about the message in question, the message I had sent to Mr. Brewer at Friar's Point, and wanted to know what about it, whether they had delivered it or what about it, and he said, 'Wait a minute and I'll see.' He went off and was gone from the phone a few minutes, and came back and said that the telegram had been delivered.

"Q. What time was that, now? A. That was about 8 o'clock that night."

The evidence shows that if the defendant had notified the plaintiff that it was unable to send the message—that it had called the Friar's Point office and found it closed—there being other channels of communication, the plaintiff probably could have closed the option by using one of them. It is not denied that the defendant failed to give notice of its inability to transmit the message on the night of October 16th. The plaintiff's telephone number had been left with the defendant's agent and was indorsed on the back of the telegram, so that notice could be given him when the delivery was made. Not hearing from the operator at 8 o'clock, he called by telephone to inquire about the message, and was informed that it had been delivered. The defendant being employed and paid to transmit the message, and being informed of its importance and the necessity for dispatch, and being furnished with the plaintiff's telephone number, we think the most obvious suggestion of diligence and good faith required it to notify the plaintiff that it had been unable to deliver the message. If the jury should believe that the defendant's agent knowingly represented to the plaintiff that the message had been delivered when it had not been transmitted, it would, to say the least, authorize the inference of a want of good faith and a disregard of the plaintiff's rights. Under the circumstances, it was unquestionably the duty of the defendant to notify the plaintiff of the failure to deliver the message. This view is sustained by many authorities. Pac. P. Tel. Cable Co. v. Fleischner, 66 Fed. 899, 4 C. C. A. 166; Swan v. W. U. T. Co., 129 Fed. 318, 63 C. C. A. 550, 67 L. R. A. 153; Jones on Telegraph & Telephone Companies, § 277; 2 Thompson on Negligence, § 2399; 2 Joyce on Electric Law, § 744a. We are of opinion that the court erred in directing the verdict.

The judgment is reversed, and the case is remanded for a new trial.