## 10201

HARTNESS v. WESTERN UNION TELEGRAPH CO.

(99 S. E. 759.)

TELEGRAPHS AND TELEPHONES—LIMITATION OF LIABILITY—FAILURE TO TRANSMIT MESSAGE—UNREPEATED TELEGRAM.—In view of Carmack Amendment, sec. 1, as amended by Act June 18, 1910 (U. S. Comp. St., sec. 8563), classifying messages as "repeated" and "unrepeated," stipulation limiting telegraph company's liability "for mistakes, or delays in the transmission or delivery, or for nondelivery, of any unrepeated telegram," precluded recovery, beyond stipulated amount, for company's failure to transmit telegram which was not to have been repeated; the stipulation being applicable though damage was not caused by failure to repeat message.

Before TOWNSEND, J., Orangeburg, Spring term, 1918. Modified.

Action by O. W. Hartness against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals.

*Messrs. Raysor & Summers, Francis R. Stark* and *Nelson & Gettys,* for appellant. *Mr. Thomas Raysor* submits: *That the presiding Judge erred in charging the jury that despite the agreement between the parties on the subject of repetition of the message, the respondent was not limitd*

*thereby, if the appellant company negligently failed to transmit the message entrusted to it by the respondent:* 95 Mass. (13 Allen) 226; 135 Mich. 600; 98 N. W. 402; 72 N. Y. S. 534; 130 Cal. 657; 63 P. 83; 53 L. R. A. 678; 80 Am. St. Rep. 153; 70 Ill. 275; 53 N. E. 194; 157 Ind. 90; 56 Neb. 415; 76 N. W. 904; 71 Am. S. R. 682; 101 Kan. 307; 93 S. E. Rep. 773; 108 Tex. 427; 196 S. W. 516; 201 Ill. App. 37; Kan. 250; 174 Ky. 210; 192 S. W. 70; 196 S. W. 28 (Mo. App. 1917); 191 S. W. 817 (Tex. Civ. App. 1917); 162 Pac. 708 (Okla. 197); 156 P. (Okla. 1916) 1175; 158 Pac. (Okla. 1916) 1139; 179 S. W. 649 (Ark. 1916); 42 App. D. C. 398; L. R. A. 1915b, 685; 130 Tenn. 547; 172 S. W. 278; 210 N. Y. 59; 103 N. E. 957; 203 Fed. 140; 125 Pac. 242; 163 Cal. 298; 154 U. S. 1; 14 Sup. Ct. 1098; 38 L. Ed. 883; 112 U. S. 331; 5 Sup. Ct. 151; 28 L. Ed. 717; 226 U. S. 491; 33 Sup. Ct. 148; 57 L. Ed.   *The plaintiff having testified to only $704 damages and the verdict having been returned for $1,013.40, the difference should have been remitted:* 51 S. C. 143; 51 Ct. Cl. 155; 163 Pac. 1087.

*Messrs. Francis R. Stark* and *Nelson & Gettys,* submit: *The limitation of liability provided for was a condition attached to the rate adopted by the plaintiff, and he was bound thereby regardless of whether or not he signed any contract:* 233 U. S. 97; 241 U. S. 318; 156 Pac. 492. *The message is an interstate message, and the stipulation is valid and reasonable:* 108 S. C. 502; 226 U. S. 491; 87 S. C. 219; 154 U. S. —; 38 L. Ed. 883. *The stipulation cannot first be attacked in a State Court, but must first be attacked before the Interstate Commerce Commission:* 230 U. S. 247; 57 L. Ed. 1472; 122 Pac. 139; 96 Atl. 219; 73 So. 973; 231 Fed. 405; 44 I. C. C. 670. *This stipulation has been upheld by the Courts of several States, when applied to interstate telegrams:* 132 N. C. 390; 91 S. E. 1009; 161 N. W. 755 (Wisconsin); (Ala.) 73 So. 973; (Oklahoma) 156 Pac. 1175; 42 Wash. L. R. 722; 119 Va. 14; 89 S. E. 105; 97

Kansas 619; 155 Pac. 716. *The stipulation applies to delays and failure to deliver as well as to errors in transmission:* 79 S. C. 160; 441 S. C. 670. *The limitation of the liability of appellant to $50 was valid and reasonable, and plaintiff is bound thereby:* 39 S. C. 55; 75 S. C. 324; (Okla.) 162 Pac. 708; 23 Philadelphia Dict. Rep. 291; 59 Pa. Sup. Ct. 122; 169 S. W. (28 Mo.), *W. U. T. Co. v. Wisner,* Court of Appeals, Ohio, decided January, 1915, but not reported; 222 U. S. 424; 122 U. S. 529; 242 Fed. 658; 116 U. S. 517; 233 U. S. 97; 226 U. S. 519; 57 L. Ed. 328; 226 U. S. 513; 57 L. Ed. 323; 104 U. S. 393; 79 S. C. 160.

*Messrs. L. A. Hutson* and *Wolfe & Berry,* for respondent, submit: *The rules of appellant do not apply under the law to a case where no attempt was ever made to send the message:* 6 Daly 200; 28 L. R. A. (N. S.) 570; 91 C. C. A. 172; 165 Fed. 138; 89 Ala. 510, 520; 18 Am. St. Rep. 148; 7 So. 419; 72 Tex. 654; 13 Am. St. Rep. 843; 10 S. W. 734; 24 Nev. 125; 77 Am. St. Rep. 791; 50 Pac. 438; Jones on Tel. & Tel. Co., sec. 379; Thompson on Negligence, sec. 2424; 153 Fed. 327; 124 S. W. 151; 1 Daly 575; 71 So. Rep.; 124 N. Y. 256; 74 N. Y. St. 313; 1 Daly 547. *The verdict for $1,013.40 was correct:* 2 Thomp. Neg. 2461; 45 Fla. 363; 11 L. R. A. (N. S.) 572. *The Circuit Judge was in error in granting a nonsuit as to punitive damages as the facts in this case take it without the rule laid down in 147 U. S. 108; 37 L. Ed. 97, and 105 S. C. 289.*

June 23, 1919.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

This is an action for damages, on account of the failure of the defendant to transmit and deliver a telegram.

The allegations of the complaint, material to the questions involved, are as follows:

That on the 7th day of April, 1917, the plaintiff engaged the defendant to transmit from the city of Orangeburg, S. C., to the city of Evansville, Ind., and there deliver to the Phœnix Flour Mills, of Evansville, Ind., the following message:

"To Phœnix Flour Mill, Evansville, Ind.: Ship one hundred twenty-five eights, seventy-eight barrels, sixteenths, all Bright Jewel. Specifications in mail for balance. O. W. Hartness."

That the plaintiff delivered the said message to the defendant over the phone, and the same was received by the agent of the defendant over the phone in the office of the defendant, and was written by the said agent on one of the blank forms used for telegrams on said date, to be transmitted to the Phœnix Flour Mill, of Evansville, Ind., and the defendant carelessly and negligently, and not regarding its duty in that behalf, failed to transmit the said message and carelessly and negligently misplaced and lost the said telegram blank on which the said message was written, and the same was afterwards found in the street in front of the office of the said defendant.

The defendant denied the allegations of the complaint, and also denied that it ever received this message at its office at Orangeburg, S. C., for transmission, and further says that if it did receive the message it was delivered and received under the terms of a contract, limiting its liability on the back of its message form, which was the regular form of contract under which this company does business, and contains the following provisions:

"Send the following telegram subject to the terms on back hereof, which are hereby agreed to. * * *

"All telegrams taken by this company are subject to the following terms:

"'To guard against mistakes or delays the sender of a telegram should order it repeated, that is, telegraphed back to the originating office for comparison. For this, one-half

the unrepeated telegram rate is charged in addition.    Unless otherwise indicated on its face, this is an unrepeated telegram and paid for as such, in consideration whereof it is agreed between the sender of this telegram and this company as follows: 1. The company shall not be liable for mistakes or delays in the transmission or delivery, or for nondelivery, of any unrepeated telegram, beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery, or for nondelivery, of any repeated telegram, beyond fifty times the sum received for sending the same, unless specifically valued; nor in any case for delays arising from unavoidable interruptions in the working of its lines; nor for errors in cipher or obscure telegrams.

" '(2) In any event the company shall not be liable for damages for any mistakes or delays in the transmission or delivery, or for nondelivery, of this telegram, whether caused by the negligence of its servants or otherwise, beyond the sum of fifty dollars, at which amount this telegram is hereby valued unless a greater value is stated in writing hereon at the time the telegram is offered to the company for transmission, and an additional sum paid or agreed to be paised based on such value equal to one-tenth of one per cent. thereof.' "

At the close of the testimony, the defendant's attorney made a motion for the direction of a verdict, both as to actual and punitive damages, which was granted as to punitive but refused as to actual damages.

The jury rendered a verdict in favor of the plaintiff for $1,013.40, and the defendant appealed.

His Honor, the presiding Judge, charged the jury as follows:

"Now, upon those stipulations that I have read from the beginning down through the second stipulation, upon the language of those two stipulations, the telegraph company

asks you to limit the amount for which it should be held liable to the plaintiff in case of failure to send or deliver this message, to the sendee at Evansville.

"I charge you that this rule that I have just read you is not intended to secure a timely effort to send the message, but to make more certain its accurate transmission.

"The first lines of the rule show its meaning plainly: 'To. guard against mistakes or delays the sender of the message should order it repeated, that is, telegraphed back to the originating office for comparison.'

"The message must, of course, be sent before it can be repeated; it must be sent and repeated before any comparison could be made. Although the regulation purports to be made to guard against mistakes and delays, it should refer, or be construed to refer, to such mistakes and delays as could be corrected or avoided by repetition and comparison; otherwise, a delay caused by the conduct of the company in negligently failing to send or to attempt to send the message would come within the rule. I charge you that this limitation does not apply when no effort was made to put the message in transit, if no effort was made.

"I further charge you that, if you find that the said message was delivered to the company, it was delivered and accepted by the company subject to the terms of a written contract that in no event should the company be liable for damages or for any mistakes or delays in the transmission or delivery, or for nondelivery, of the said telegram caused by the negligence of its servants, or otherwise, beyond the sum of fifty dollars, at which amount the telegram was valued, unless you should find from the testimony that a greater value was stated in writing on the said telegram at the time it was accepted by the company for transmission, and an additional sum paid, or agreed to be paid, on such value equal to one-tenth of one per cent. thereof. But, in order to avail itself of this limitation of its liability, the defendant must have acted under the contract and used due

care to send the message. The contract was intended to guard against such damages as would have been avoided by the repetition of the message."

His Honor, the presiding Judge, refused to charge:

"That the term 'nondelivery' as used in the stipulations appearing on the telegraph blank offered in evidence as having been filed with the Interstate Commerce Commission, and which stipulations are set up by way of defense in the answer of the defendant, includes and embraces a failure to transmit."

It will thus be seen that his Honor, the presiding Judge, construed the provisions of the contract which limit the liability of the defendant, as applicable only to those cases in which the damages could have been prevented by a repetition of the message; and that the contract did not contain a limitation upon the liability of the defendant for damages, caused by its negligence in any other manner.

The ruling of his Honor, the Circuit Judge, was based upon the principles announced in the case of *Box v. Postal Tel. Cable Co.*, reported in 165 Fed. 138, 91 C. C. A. 172, 28 L. R A. (N. S.) 566.

In that case the contract printed on the back of the telegram contained the following provisions:

"To guard against mistakes or delays, the sender of a message should order it repeated; that is, telegraphed back to the originating office for comparison. For this, one-half of the regular rate is charged in addition. It is agreed between the sender of the message written on the face hereof and the Postal Telegraph Cable Company, that said company shall not be liable for mistakes or delays in the transmission or delivery, or for nondelivery, of any unrepeated message, beyond the amount received for sending the same."

In construing the said provisions, the Circuit Court of Appeals used the following language:

2—112

"The rule is not intended to secure a timely effort to send the message, but to make more certain its accurate transmission. * * * Although the regulation purports to be made to guard against mistakes or delays, it should be construed to refer to such mistakes and delays as could be corrected or avoided by repetition and comparison; otherwise, a delay caused by the conduct of the company in negligently failing to send or to attempt to send the message would come within the rule. And it is held that it does not apply where 'no effort was made to put the message on its transit.' *Birney v. N. Y. & W. Printing Telegraph Co.,* 18 Md. 341, 81 Am. Dec. 607. It is difficult to believe that this stipulation was intended by the parties to be applicable to a case in which the conduct of the company made it impossible for the message to be repeated."

The limitations of liability in the rules construed in that case are very different from those now under consideration.

In 1910 (which was after the decision in the Box case), Congress, in extending the provisions of the so-called Carmack amendment to telegraph and telephone companies, further amended section 1 by incorporating in it a clause reading as follows:

"That messages by telegraph, telephone, or cable, subject to the provisions of this act, may be classified into day, night, repeated, unrepeated, letter, commercial, press, government, and such other classes as are just and reasonable, and different rates may be charged for the different classes of messages." Act June 18, 1910c, 309, 36 Stat. 545 (U. S. Comp. St., sec. 8563).

The form of contract indorsed upon the telegram herein has been determined by the Interstate Commerce Commission to be reasonable and valid.

In the case of *Cultra v. W. U. T. C.,* 44 Interst. Com. Com'n R. 670, the Interstate Commerce Commission had under consideration the reasonableness of a form of con-

tract, which was in no particular materially different from the form, upon which the message in this case was written.

In determining the validity of such form of contract, the commission thus construed its provisions:

"If, as a matter of law, as the complainants contend, the rate charged and collected for an unrepeated message carries with it the same protection to the sender or recipient and imposes upon the telegraph company the same liability and degree of care as the rate for a repeated message, then the express authority by the Congress to maintain classifications of repeated and unrepeated messages with the different rates attached thereto, is without significance or effect; for no useful purpose would have been served in authorizing the two classifications taking different rates without recognizing the fundamental difference between them that for years has been well understood and maintained. It seems clear, therefore, that the Congress in recognizing, by the amendment to the act above quoted, these three classes of messages with the different charges attached, has also recognized a distinction in the defendant's liability under them, and has sanctioned this distinction for the future, subject, of course, to the general provisions in the act requiring all rates, and all rules and regulations affecting rates, to be reasonable and uniform in their application, under like circumstances, for the different kinds of service offered. Such classification of its messages, with the different rates and liabilities attaching to them, having affirmative recognition in the act itself, it follows that when lawfully fixed and offered to the public they are binding upon the defendant, and upon all those who avail themselves of its services, until they have been lawfully changed. Abundant authority for this view is found in numerous decisions by the State and Federal Courts."

The important distinction between the limitations upon the liability of the defendants in the two cases is that those construed in the Box case were applicable only to those cases in which a repetition of the message would have pre-

vented the damages, while the limitations in the present rules of the defendant are applicable both to repeated and unrepeated messages.

The telegram which the plaintiff delivered to the defendant was not to be repeated. Therefore the amount of recovery was limited to $50—the sum beyond which the plaintiff had agreed he could not recover, for an unrepeated message.

The motion for the direction of a verdict as to actual damages should have been granted, except to the extent of $50. The defendant does not deny its liability for that sum. It is, therefore, adjudged that the judgment entered by the plaintiff be reversed, except as to the sum of $50, for which amount it is affirmed.

Modified.

MESSRS. JUSTICES HYDRICK, WATTS and FRASER concur.

MR. JUSTICE GAGE. I dissent. The contract set up by the defendant does not include the omission of the instant case.