A. W. WERTZ, RESPONDENT, v. WESTERN UNION TELEGRAPH COMPANY, APPELLANT.

TELEGRAPH.—NEGLIGENCE.—EVIDENCE.—Where the evidence showed that a telegraph message was delivered to the defendant's agent, and was transmitted wrongly, the burden is cast upon the telegraph company of showing that the mistake did not occur through the negligence of itself or agents.

ID.—CONDITION EXEMPTING FROM LIABILITY.—A telegraph company which places upon its blanks a condition that the company will not be liable for mistakes or delay, unless the message be repeated, cannot in this way relieve itself from liability for the negligent conduct of itself or agents.

DAMAGES.—PROXIMATE —LOSS OF BARGAIN.—Where the evidence tended to show that, in consequence of a mistake in transmitting a message, the plaintiff lost a contract for the conveyance to him of land worth $5,500 for $4,000; held, that such damages were the proximate result of the negligent conduct and the difference would be the measure of damages.

APPEAL from an order of the district court of the first district granting a new trial. The opinion states the facts except the following:

At the conclusion of the testimony, and after both parties had rested, the counsel for appellant, defendant below, asked the court to instruct the jury to return a verdict for fifty-five cents, the cost of the message, which was done and judgment rendered thereon. The condition of the blank was as follows:

"To guard against mistakes or delays, the sender of a message should order it *repeated*; that is, telegraphed back to the originating office for comparison. For this, one-half the regular rate is charged in addition. It is agreed between the sender of the following message and this company that said company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of any *unrepeated* message, whether happening by negligence of its servants or otherwise, beyond the amount received for sending the same; nor for mistakes, or delays in the transmission or delivery, or for non-delivery of any *repeated* message beyond fifty times the sum received for sending the same, unless specially insured, nor in any case for delays arising from unavoidable interruption in the working of its lines, or for errors in cipher or obscure messages. And this company is hereby made the agent of the sender, without liability, to forward any message over the lines of any other company when necessary to reach its destination. Correctness in the transmission of messages to any point on the lines of this company can be *insured* by contract in writing, stating agreed amount of risk, and payment of premium thereon at the following rates, in addition to the usual charge for repeated messages, viz: one per cent. for any distance not exceeding 1,000 miles, and two per cent. for

any greater distance. No employé of the company is authorized to vary the foregoing."

*Messrs. Evans and Rogers, Mr. A. G. Horn* and *Mr. George H. Fearons* of counsel, for the appellant.

*Messrs. Smith and Smith,* for the respondent.

ZANE, C. J.,

The plaintiff delivered to the defendant, at its office in Ogden City, Utah, to be transmitted to Eagle Rock, the following message: "To George H. Storer, Eagle Rock, Idaho: I will give one thousand cash, ball, six months. Answer." Which was delivered to the addressee at Eagle Rock in the following language: "I will give one hundred cases, balc six months. Answer." In consequence of the change, the evidence tended to show that the plaintiff lost a contract for the conveyance for $4,000 of real estate then worth $5,500. The message was written on a blank, on which was printed a condition that the company would not be liable for mistakes and delays in transmission, from negligence of its agents or otherwise, unless the message should be repeated, and requiring therefor an additional charge of one-half the regular rate. The message was not repeated. The jury returned a verdict under the charge of the court for the amount received for transmission, which the court, upon the motion of the plaintiff, set aside. From this order the defendant has appealed, and assigns the same as error. The cause of the failure to transmit the message as delivered is not expressly shown; but the probability is that the defendant's agents knew precisely how the failure occurred. If they did not, the defendant had the best means of finding out. If it was not the company's fault, it should have shown it. The presump-

tion from the evidence is that the negligence of the defendant's agents caused the failure.

This brings us to the question, did the contract exempt the defendant from liability for the negligence of its agents? If the senders of dispatches and telegraph companies were the only parties interested in such transactions, they might make such contracts. The public has an interest in the telegraph service. The property employed belongs to the company, as well as the proceeds of the business; but the property is used and business is conducted for the accommodation and convenience of the public. Public policy forbids contracts by telegraph companies exempting them from the consequences to others of the negligence of their agents in transmitting messages for their employers. Such liability promotes promptness, skill and care in that branch of business. Such companies may by contract exempt themselves from loss or damage to others not from their own fault. Notwithstanding such conditions, the companies are liable for ordinary negligence in transmitting dispatches. *Telegraph Co.* v. *Griswold,* 37 Ohio St. 301; *Gillis* v. *Telegraph Co.,* (Vt.) 17 Atl. Rep. 736; *Thompson* v. *Telegraph Co.,* (Wis.) 25 N. W. Rep. 789.

In the case of *Express Co.* v. *Caldwell,* 21 Wall. 264, the court said: "Telegraph companies, though not common carriers, are engaged in a business that is in its nature almost, if not quite, as important to the public as is that of carriers. Like common carriers, they cannot contract with their employers for exemption from liability for the consequencees of their own negligence. But they may by such contracts, or by their rules and regulations brought to the knowledge of their employers, limit the measure of their responsibility to a reasonable extent. Whether their rules are reasonable or unreason-

29

able must be determined with reference to public policy, precisely as in case of a carrier." And in *Railroad Co.* v. *Lockwood*, 17 Wall. 357, the same court held that a common carrier cannot lawfully stipulate for exemption from responsibility from the negligence of himself or his agents. If the plaintiff lost the difference between the contract price of the land and its actual value at the time because of the negligence of defendant's agent, that difference was his damage. The decision of the court granting the new trial is affirmed, and the cause is remanded to the court below.

ANDERSON, J., and BLACKBURN, J., concurred.