WILLIAM DEERING & CO. v. EDWARD SHUMPIK.[1]

February 1, 1897.

Nos. 10,410—(262).

**Verdict Sustained.**

*Held,* the verdict is sustained by the evidence.

**Evidence.**

Evidence *held* sufficient to prove that an alleged agent was either duly authorized, or that his acts were subsequently ratified by his principal

**Same—Telephone.**

Evidence of the identity of a person conversing through a telephone *held* sufficient.

Appeal by plaintiff from an order of the district court for Hennepin county, Pond, J., denying a motion for a new trial. Affirmed.

*Marshall A. Spooner* and *Spooner & Laybourn,* for appellant.

Appellant contends that the conversation by telephone should not have been admitted in evidence: (1) Because there was no identification of the party sufficient to justify the contention that it was Mr. McKee who telephoned, the latter having testified that he never had any conversation with defendant over the telephone. Oberman B. Co. v. Adams, 35 Ill. App. 540. (2) The conversation was immaterial in view of the fact that defendant afterward had the bond in his own hands, and could easily have ascertained whether Dr. Downey had signed the instrument. He should not have been permitted to avoid his liability upon a sealed instrument by testifying to facts which practically vary the terms of the instrument. The conduct of defendant in omitting to see whether Dr. Downey had signed the bond was wholly inconsistent with his claim that defendant was anxious to know whether Dr. Downey had signed before him. A party attacking an instrument on the ground that his signature was obtained by fraud must establish his case by clear, satisfactory and convincing proof, Smith v. Jordan, 13 Minn. 246 (264); Guernsey v. American Ins. Co., 17 Minn. 83 (104); Layman v. Minneapolis Realty Co., 60 Minn. 136, 62 N. W. 113; Crookston Imp. Co. v. Marshall, 57 Minn. 333, 59 N. W. 294; and must show he himself was reasonably free from negligence,

---

[1] Reported in 69 N. W. 1088.

McCall v. Bushnell, 41 Minn. 37, 42 N. W. 545; Minneapolis, St. P. & S. S. M. Ry. Co. v. Chisholm, 55 Minn. 374, 57 N. W. 63; Parlin v. Small, 68 Me. 289.

*Brooks & Hendrix,* for respondent.

When one of the parties to a contract is induced to execute it by the intentional fraud of the other, the defrauded party may defend against its enforcement even if he is lacking in ordinary business prudence in executing it. Aultman & Co. v. Olson, 34 Minn. 450, 26 N. W. 451; Maxfield v. Schwartz, 45 Minn. 150, 47 N. W. 448; Erickson v. Fisher, 51 Minn. 300, 53 N. W. 638.

CANTY, J. One Vaughn was in the employ of plaintiff as collector, and he, as principal, and the defendant, as surety, signed a bond payable to plaintiff, conditioned that Vaughn would account for, pay over, and deliver to plaintiff all moneys and securities belonging to it, coming into his hands. Vaughn collected $695 of the plaintiff's money, which he failed to pay over or account for, and this action is brought to recover the same on the bond. The defense is that the bond was signed by defendant under an agreement with plaintiff that it should not take effect or be considered as executed or delivered until one Downey also signed and executed it as a surety, which Downey never did. Defendant had a verdict, and from an order denying its motion for a new trial plaintiff appeals.

1. Appellant's contention that the verdict is not sustained by the evidence is not well founded. There is evidence tending to prove that Vaughn had requested defendant to sign this bond; that subsequently the bond prepared for the signatures of the principal and sureties was presented to defendant at his store in Minneapolis by one Barclay, a bookkeeper of plaintiff. As to what then and there occurred, defendant testified:

"I then said to Mr. Barclay, 'How is this that Dr. Downey's name isn't on the bond?' 'Why,' he said, 'I have just come from his office,' he said, 'and he was very busy, and requested that I should come and see you, and have you sign first, and then he would sign.' * * * I said, 'Very well, under those conditions I will sign that bond;' but I said, 'I want it understood that it will not hold me until Dr. Downey and Mr. Vaughn have both signed.' He said that that would be all right; he would go back to the office, and have Dr. Downey sign. * * * I said, 'Now, you understand and I

understand that I am not to be held on this bond until Dr. Downey and Mr. Vaughn have both signed it.' He said, 'Certainly.' I then handed it back, and in the meantime thought about the acknowledgment. I had some experience in the same line before, and I stated, 'How about the acknowledgment?' 'Why,' he said, 'that will be all right.' He says, 'After I get Dr. Downey to sign the bond and Mr. Vaughn, I will telephone you, or we will telephone you, and you can come down to the office, and make your acknowledgment. We have a notary there.' I said, 'Very well,' and that is all the conversation there was."

Defendant further testified that a few days afterwards he was called to the telephone in his store, and, on responding, was told by a voice through the telephone that it was Mr. McKee, of the plaintiff company. The witness testified:

"I said, 'Very well, Deering, what can I do for you?' He said, 'Mr. Vaughn's bond is ready for you to sign.' I then asked if Dr. Downey and Mr. Vaughn had both signed that bond. He said, 'Yes; it is all ready for you.' I said, 'Very well; I will be down in a few minutes.' That was all the conversation." The witness further testified that he went immediately to plaintiff's office, and found a man sitting at a desk. Said the witness: "I asked for Mr. McKee. He said that was his name. I said, 'You telephoned me in regard to Mr. Vaughn's bond being ready for me to sign.' He said, 'Oh, yes,'" and produced the bond.

Thereupon defendant signed an affidavit attached to the bond, and acknowledged the execution of the bond, without seeing his former signature (as the bond was folded so as to conceal the same), and supposed at the time that it had in the meantime been signed by Downey as well as Vaughn. The evidence also shows that Barclay presented the bond to Downey for signature before he presented it to defendant, and that, after defendant signed it, it was again presented to Downey for signature before defendant acknowledged it, as aforesaid; but Downey always refused to sign the bond and never did sign it. We are of the opinion that the foregoing evidence, though contradicted in part by evidence on behalf of plaintiff, is sufficient to sustain the verdict.

2. Plaintiff assigns as error the overruling of its objections to the evidence of the conversation between defendant and Barclay at the time the latter presented the bond to the former for signature, on the ground that it did not appear that Barclay had authority to represent plaintiff in entertaining or agreeing to the conditions on

which defendant claims he then signed the bond, and that, in procuring the signature of defendant, Barclay was acting as the agent, not of plaintiff, but of Vaughn.

Whether Barclay had authority to represent plaintiff in procuring this bond, and, if not, whether McKee (who it is admitted had such authority) was informed by Barclay of the conditions on which defendant signed the bond, were, on the evidence, questions for the jury. The statements of McKee to defendant through the telephone tend to prove that he (McKee) had been so informed. Again, Barclay was in plaintiff's employ, and the evidence tends to prove that he presented the bond to defendant for signature by direction of McKee. To explain this, McKee testified that, when Vaughn was in a hurry to go out on the road, he came to the witness, and, said the witness, "asked me if I had any objection to his arranging with one of the boys to take the bond, and have it signed; that he had seen parties who he thought would sign the bond." The further cross-examination has some tendency to show that, at this time, Vaughn left the blank bond with McKee himself. Mr. McKee further testified:

"Q. Now, Mr. McKee, when did you first hear anything about Dr. Downey signing that bond, if you remember? A. Well, I wouldn't be sure that I remember anything regarding that until Mr. Shumpik came in there to sign and acknowledge the bond. Q. You think that this is the first you ever heard of it? A. Well, it is possible that the man who came in and delivered it to me said that Mr. Vaughn had personally arranged to have Dr. Downey sign it, but Dr. Downey wouldn't sign it. I think that is possible."

3. Plaintiff assigns as error the overruling of its objection to the evidence of the conversation of defendant with some one through the telephone, as aforesaid, for the reason that, as claimed by plaintiff, it does not appear that the person who talked to defendant through the telephone was McKee. McKee denied on the witness stand that he ever had any such conversation through the telephone with defendant. The point is not well taken. The jury had a right to believe defendant's testimony that, immediately after the conversation through the telephone, McKee admitted at his office that he had telephoned defendant in regard to the bond. Defendant also testified: "The voice I heard at the telephone was the same voice I heard right after," when talking to McKee at his office.

These are all the points raised worthy of consideration. Order affirmed.