HARRISON GRANITE CO. *v.* PENNSYLVANIA RAILROAD CO.[1]

1. GARNISHMENT—SERVICE—SUFFICIENCY—JURISDICTION—RECORD ON APPEAL.

Where service is obtained by garnishment and attachment, so that there is no jurisdiction to render judgment against the principal defendant unless there is a liability of the garnishee to him, and the record on error contains neither the writs, the disclosure, nor the answer of the garnishee, a ruling sustaining jurisdiction cannot be reviewed.

2. APPEAL AND ERROR—RULINGS SUSTAINING JURISDICTION—REVIEW—RECORD.

Even in proceedings in which jurisdiction of the trial court

[1] Rehearing denied November 7, 1906.

must be made affirmatively to appear, this court will not consider exceptions to a ruling sustaining jurisdiction without the evidence upon which the ruling was made.

3. EVIDENCE—CONVERSATION BY TELEPHONE—ADMISSIBILITY.

Where there is no doubt of the identity of persons communicated with by telephone the conversation is admissible.

4. SAME — OPINION — FINANCIAL RESPONSIBILITY — STATEMENT OF FACT.

Where, in answer to the question whether a certain association has any financial responsibility or property the witness answers "No," the answer imports knowledge, and it need not appear further how he obtained that knowledge.

5. SAME—MATERIALITY—RESPONSIBILITY OF THIRD PERSON.

Where a railroad company, having possession as carrier of a monument consigned by the manufacturer to himself, rendered special service regarding its transportation against the manufacturer's protest, and took therefor a large portion of the fund which had been raised by a voluntary association for its purchase, and the manufacturer brought suit against the carrier to recover the money so paid, the question whether the association had any financial responsibility was material.

6. APPEAL AND ERROR—REVIEW—EXCEPTIONS—NECESSITY.

Rulings as to the admissibility of evidence to which no exceptions are found in the record cannot be reviewed.

7. CARRIERS—SPECIAL SERVICE—INTERFERENCE BETWEEN BUYER AND SELLER OF SHIPMENT—DECLARATION—VARIANCE.

Evidence from which it may be found that defendant railroad company, with full knowledge of the facts that a monument in its possession as carrier was manufactured pursuant to a contract with a voluntary association which had in its possession sufficient funds to pay the contract price, refused to render its regular service in carrying the monument to its destination, and by agreement with the purchaser rendered special service in that respect, for which it received from the purchaser several hundred dollars of the fund which had been raised to pay for the monument, supports a declaration alleging that with full knowledge of the facts defendant took possession of and forwarded the monument on the contract made with strangers and obtained possession of the fund which was thereby lost to plaintiff.

8. SAME—LIABILITY OF CARRIER.

Such facts support recovery against the carrier on the theory

that there was a breach of duty on the carrier's part and a wrongful interference with the rights of the manufacturer to his damage and to defendant's profit, notwithstanding the carrier transported the property and delivered it in good order as it was bound to do by its contract.

9. TRIAL—DIRECTION OF VERDICT—PROPRIETY.
   Though the testimony is undisputed, it is improper to direct a verdict where it cannot be said that but one conclusion can be reached upon the facts.

Error to Lenawee; Chester, J.   Submitted June 13, 1906.   (Docket No 11.)   Decided September 20, 1906.

Case by the Harrison Granite Company against the Pennsylvania Railroad Company for wrongful interference with plaintiff's contract rights.   There was judgment for plaintiff on a verdict directed by the court, and defendant brings error.   Reversed.

*Morgan & Priddy* and *D. B. Morgan*, for appellant.
*Smith, Baldwin & Alexander,* for appellee.

The testimony produced for the plaintiff tended to prove that it is a Michigan corporation with quarries at or near Barre, in Vermont, its principal office at Adrian, Mich., and its executive offices in New York City.   Under date May 19, 1902, it contracted with the Philadelphia Chapter, Daughters of the Confederacy, to furnish and set complete in Hollywood Cemetery, Richmond, Va., a soldiers' monument, to be erected about October 1, 1902, for which the said chapter agreed to pay to the order of plaintiff $1,500 upon completion of the work.   For various reasons, the monument, not completed, was, on October 21, 1902, still at Barre.   Arrangements were made by the said chapter for a public dedication of the monument to take place in the afternoon of October 25, 1902, of which arrangements plaintiff was notified and an understanding reached that dedication could be and would be made, with some details of the monument unfinished.   Instructions to plaintiff to

ship the monument were received October 20, 1902. On October 21, 1902, the monument was delivered, at Barre, to the Central Vermont Railroad for transportation to Richmond, via the Central Vermont, New York, New Haven & Hartford, Pennsylvania, and Richmond, Fredericksburg & Potomac Railroads; the last-named road being operated by the Pennsylvania. The freight charges were $72. Plaintiff was both consignor and consignee. The car arrived at New York early on the morning of October 23d, and was there met by a representative of plaintiff, who under instructions from plaintiff went with the car to Jersey City, and there made application to the proper officers of the Pennsylvania Company to have the car go out that day with through freight train B. P. 1, by which, according to usual schedule, the car would be delivered at Richmond about noon of October 24th, affording proper time to unload and set the monument. On October 21, 1902, an arrangement had been made between the Pennsylvania Company and some person or persons representing the said chapter to give this car special service from Jersey City to Richmond, for which service the sum of $700 was to be paid. The regular service for the car, applied for, was refused, the defendant stating the reason for such refusal to be that the said special arrangement had been made. The car went forward by special service, the monument was received at Richmond by representatives of plaintiff who awaited it, and was set, dedicated, finally completed, and plaintiff was paid the sum of $800, with notification that:

"Inasmuch as the chapter was compelled to expend the sum of $700.00 in order to get the monument to Richmond at the proper time, which expenditure was rendered necessary by your failure to keep your contract with them as to the time when the said monument should be delivered, this amount of $700.00 has been charged against your bill."

The law firm of Weeks, Battle & Marshall, of New York City, represented the said chapter. Under date of

October 21, 1902, a letter was written by this firm to plaintiff, reciting an interview of the previous day between the president of plaintiff company, a member of the said firm, and ladies whose names are given, and notifying plaintiff that it was expected that the monument would be in position on or before October 25th, with the further statement:

"We are informed that the Pennsylvania Railroad will rush it through after delivery to them, and the Central Railroad of Vermont have informed us today by long distance telephone from St. Albans, Vt., that they saw no reason why a special could not be arranged to handle the monument through to New York."

This firm of attorneys remitted to plaintiff the money paid to it with the notification already referred to. During the negotiations which were had on October 23d with officials of the defendant company, plaintiff was informed by the assistant general superintendent of transportation that the instructions to forward the car by special service had come from a Mr. Blythe, who was then in his office. The president of plaintiff asked that the matter be again referred to Mr. Blythe to see if the order could not be revoked, and was told that he had talked with Mr. Blythe, that the special service would be given, and referred plaintiff to the said firm of attorneys. He was told to say to Mr Blythe that plaintiff would not consent to have payment for said special service made out of the fund for the monument. Plaintiff at once took up the matter with the said law firm, informed them of his conversation with the railroad officials, and asked them to cancel the arrangement with the railroad company. The reply was that the arrangement would go forward unless the plaintiff would deposit a certified check for $2,500 as indemnity. This plaintiff declined to do.

In the court below, plaintiff had verdict, by direction of the court, and judgment, for the sum of $700 and interest thereon. The defendant pleaded the general issue with notice that defendant would show that there had

been no service of process, direct or substituted, made upon defendant within the period of time provided and limited by the statute; that the substituted service made upon defendant after the expiration of the period of time provided by the statute was illegal and void. The printed record, by recital, discloses that the suit was begun by garnishment and attachment. The declaration recites that defendant was duly summoned by writ of attachment.

*Morgan & Priddy*, for appellant.

*Smith, Baldwin & Alexander*, for appellee.

OSTRANDER, J. (*after stating the facts*). The points argued in the brief for appellant will be considered in the order in which they are presented. The first is that, where service is obtained by garnishment or garnishment and attachment, if the garnishee defendant is not liable to the principal defendant, the court has no jurisdiction to render judgment against the principal defendant. It is predicated upon the recital, in the brief, that the garnishee defendant in its disclosure and in answer to interrogatories denied all liability to the principal defendant. We find neither the writs, the disclosure, nor the answers of the garnishee defendant incorporated in the record. Even in proceedings in which jurisdiction of the trial court must be made affirmatively to appear, this court will not consider exceptions to a ruling sustaining jurisdiction without the evidence upon which the ruling was made.

Objection was made to the reception of certain testimony given by witnesses for plaintiff. The grounds of objection are:

(*a*) That conversations, related, were by telephone, and the identity of the person talked with was not established; (*b*) that it was improperly assumed that certain persons were officials of the Pennsylvania Railroad Company; (*c*) that statements made to and by the representative of the firm of attorneys referred to were immaterial; (*d*) that incompetent and immaterial testimony of the financial responsibility of the said chapter was received.

The testimony leaves no doubt concerning the identity of the persons communicating by telephone and the official character of those who were assuming to speak for the defendant. The connection between the firm of attorneys and the said chapter and, as to the particular issue, the defendant, is also made out. None of the statements made by the attorneys is used to bind the defendant. Their authority to speak for the said chapter with respect to the particular matter was recognized by both the chapter and the railroad officials. The fact that the arrangement for the special service was made and the money consideration for it paid is not disputed.

It was essential to a recovery by plaintiff to show that it had sustained damage by reason of the alleged wrongful intermeddling of defendant. The president of plaintiff company was asked:

" Did this branch of the Daughters of the Confederacy have any financial responsibility ?
" *A.* No, sir.
" *Mr. Weaver :* That is objected to as immaterial.
" *Q.* Or property ?
" *Mr. Weaver :* Incompetent.
" *The Court :* He may answer.
" *Mr. Weaver :* Give us an exception.
" *A.* No."

The argument made is that it does not appear that the witness had any knowledge of the facts to which he testified, or had made any inquiry to satisfy himself upon that point, and if he had knowledge the fact proven was immaterial. The answers of the witness import knowledge. He was not asked for an opinion. The fact was, upon plaintiff's theory, material. As to the admission in evidence of certain letters, two, dated respectively October 23, 1902, and January 3, 1903, written by plaintiff, and one, dated January 15, 1903, written by defendant, no exceptions are found in the record.

The declaration consists of four counts, and it is insisted that the evidence makes no case within the declaration.

No objection was taken to the joinder of counts or of causes of action. The first count is trover, for conversion. The second count avers that defendant without authority possessed itself of the monument and delivered it to said chapter, which was irresponsible, and received from said chapter money of the plaintiff which it refuses to pay over. The third count avers the knowledge of defendant that said chapter had collected and had in its possession $1,500 to be paid to plaintiff as the price of a monument to be delivered at Richmond, and that for the purpose of making such delivery and getting a part of said money defendant wrongfully possessed itself of the monument and delivered it to said chapter without the payment to plaintiff of said sum of $1,500. In a fourth count, added to the declaration at the hearing, the alleged facts are set out, with scienter, in detail, with the averment that defendant, to obtain for itself $700 which otherwise would have been paid to plaintiff, knowing that said sum would thereby be wholly lost to plaintiff, wrongfully took possession of and forwarded the monument upon its contract made with strangers, thus losing such sum to plaintiff. The jury might have found, from the evidence, that the defendant, with knowledge of all the facts, refused its regular service to the plaintiff, thus preventing plaintiff from performing, as it would otherwise have done, its contract with said chapter; that the special service, rendered over the protest of plaintiff, was unnecessary, and resulted, and was bound to result, in diverting to the defendant $700 which otherwise would have been paid to plaintiff and which has, in consequence, been wholly lost to plaintiff. These facts support the declaration. Found to have existed, they warrant a recovery by plaintiff, because they establish a breach of the duty of defendant and a wrongful interference with the rights of plaintiff to its damage and to defendant's profit. The fact that defendant transported the property of plaintiff, as it was bound to do, from Jersey City to Richmond, and there delivered it to the consignee, in good order, does not afford a com-

plete answer to plaintiff's claim, because to defendant's knowledge, upon the above assumption of facts, regular transportation, which was refused, would have cost plaintiff a very few dollars, whereas the service actually rendered was bound to cost, and defendant knew would cost, plaintiff $700, which sum the defendant, instead of plaintiff, would receive. The supposed facts are not found, but, upon an idea of the import of the evidence not in harmony with that here advanced, the court directed a verdict.

For defendant it is contended that a verdict should have been directed in its favor. We are satisfied that a directed verdict for defendant would have been wrong, and that defendant's requests to charge were properly refused. We cannot, however, say that but one conclusion may be or should be reached upon the facts. As presented, it is a case in which inference and deduction perform no inconsiderable offices. We think that there were questions for the jury, and that the case should have gone to the jury with instructions.

The judgment is reversed, and a new trial ordered.

GRANT, BLAIR, MONTGOMERY, and MOORE, JJ., concurred.